STATE OF NORTH CAROLINA v. LEVAR JAMEL ALLEN

No. COA03-1369

(Filed 7 September 2004)

**1. Evidence— cause of child's injuries—testimony by physician's assistant**

The testimony of a physician's assistant who treated a child abuse victim about the cause of the child's injuries was properly admitted based upon the witness's 27 years of experience. Moreover, there is no record that defendant requested voir dire and no authority mandating voir dire without such a request.

**2. Child Abuse and Neglect— felonious child abuse—burning—evidence sufficient**

A motion to dismiss a charge of felonious child abuse inflicting serious bodily injury for insufficient evidence was correctly denied where defendant is the child's father and was supervising

him on the day the injuries were inflicted; they were at home alone; the child was 10 months old; a physician's assistant testified that the child's burns were caused by someone holding a hot object on the child; a burn on the child's hand was severe enough for a skin graft and a week in the hospital; he had trouble crawling due to burns on his hands and feet; and he remained unable to use a finger on his burned hand one year later.

**3. Constitutional Law— speedy trial—delay not purposeful or oppressive**

The denial of a speedy trial motion was not error where defendant did not present any evidence that the delay of thirteen months between arrest and trial was purposeful or oppressive or could have been avoided by reasonable effort by the prosecutor.

**4. Evidence— child abuse—baby bottle**

A baby bottle was correctly admitted in a prosecution for felonious child abuse where there was testimony that the child's burns were round and inconsistent with the curling iron which defendant contended was the accidental cause of the injuries. Defendant did not show that the probative value was substantially outweighed by the danger of unfair prejudice.

**5. Discovery— child abuse—sealed DSS file—no exculpatory evidence**

The trial court did not err in a prosecution for felonious child abuse by ruling that a DSS file did not contain exculpatory evidence. The Court of Appeals reviewed the sealed records and found nothing favorable to the accused or material to the charges at issue in this case.

**6. Sentencing— aggravating factors—found by judge**

A motion for appropriate relief was granted by the Court of Appeals and the case was remanded for resentencing where the trial court unilaterally found the existence of an aggravating factor and thereupon sentenced defendant in the aggravated range. N.C.G.S. § 15A-1340.16.

Appeal by defendant from judgment dated 31 January 2003 by Judge J. Gentry Caudill in Gaston County Superior Court. Heard in the Court of Appeals 9 June 2004.

STATE v. ALLEN

[166 N.C. App. 139 (2004)]

*Attorney General Roy Cooper, by Assistant Attorney General Lisa Granberry Corbett, for the State.*

*Richard E. Jester for defendant-appellant.*

BRYANT, Judge.

Levar Jamel Allen (defendant) appeals a judgment dated 31 January 2003 entered consistent with a jury verdict finding him guilty of felonious child abuse inflicting serious bodily injury.

The State's evidence tended to show the following: On 7 November 2001, B.K.C. (the mother) lived with her 10-month-old child, and defendant (the child's father). Around 1:00 p.m., B.K.C. went to work and left the child in defendant's care. At about 4:15 p.m., defendant called B.K.C. at work, screaming and yelling that the child had been burned. Defendant said that B.K.C. had left her curling iron on in the bathroom and the child had burned himself when he somehow pulled the curling iron down from the bathroom counter. B.K.C. left work and arrived home around 5:00 p.m.

When B.K.C. arrived home, defendant opened the door and was standing there with a diaper bag packed. B.K.C. found the child lying on the bed. The child appeared in shock, shaking, and scared. B.K.C. discovered that defendant had put ointment on the burn in the child's hand and had covered that burn using a homemade bandage. Defendant helped B.K.C. and the child into the car, but did not go to the hospital with them. At the hospital, B.K.C. removed the child's clothing and found round burns on the child's stomach and knee, in addition to the burn she previously discovered on his hand. The burns were treated and the child was released that day.

At the treating physician assistant's request, B.K.C. later took the child to be seen by a plastic surgeon, and on 4 December 2001, a skin graft was performed on the child's hand. The child was in the hospital for one week following the skin graft. Thereafter, the child had trouble crawling due to the burns on his hand and knee. Approximately one year later (January 2003), the child remained unable to use the pinky finger on that hand, and had visible scars on his knee.

At trial, Thomas McLaughlin, P.A. testified that he was the physician's assistant who treated the child's burns on 7 November 2001. McLaughlin had approximately 27 years experience as a physician's assistant and had worked at the hospital emergency room for six

years. Previously, he had worked in the emergency room at the University Hospital in Charlotte, where his duties included the diagnosis and treatment of illnesses, injuries and wounds. During the course of his career, he maintained the required annual 100 hours of continuing medical education (most in emergency room treatment), and had treated thousands of patients, including numerous patients with varying degrees of burns.

McLaughlin found that the child had either second or third degree burns on the palm of his hand, wrist, stomach, and knee. Based on the severity of the burn to the hand, he referred the child to a plastic surgeon. McLaughlin also reported the incident to the Gaston County Department of Social Services (DSS).

McLaughlin opined that the burns were inconsistent with a burn suffered from grabbing a curling iron as the burns were round and not linear in shape. Based on the severity of the burns and the belief that a person would not hold on to a hot object long enough to cause burns that deep, McLaughlin concluded that the burns were caused by someone holding an object on the child. McLaughlin also concluded that the burns were most likely caused by a round object.

At trial, defendant testified, denying allegations that he intentionally injured the child. He also testified that he was very upset at police and DSS efforts to interrogate him. He did, however, accept responsibility for the accidental burning, acknowledging that if he had been more vigilant in watching the child, the injury would not have occurred.

---

The issues on appeal are whether the trial court erred in: (I) permitting Thomas McLaughlin, P.A. to testify as to the cause of the child's injuries; (II) failing to dismiss the charge; (III) denying defendant's motion to dismiss for lack of a speedy trial; (IV) admitting State's exhibit 32 (a baby bottle) into evidence; (V) its ruling that the DSS file did not contain exculpatory evidence; and (VI) imposing a sentence in the aggravated range in violation of the Sixth Amendment and *Blakely v. Washington.*

I

[1] First, defendant argues that the trial court erred in permitting Thomas McLaughlin, P.A. to testify as to causation of the child's injuries in that he was not properly qualified as an expert, the defendant was not allowed to *voir dire* him as to experience,

and McLaughlin did not have the requisite training to give causation testimony.

Our Supreme Court has held that " '[w]hether the witness has the requisite skill to qualify him as an expert is chiefly a question of fact.' " *State v. Zuniga,* 320 N.C. 233, 252, 357 S.E.2d 898, 911 (1987) (citation omitted). "[T]he trial court's decision concerning whether or not a witness has qualified as an expert is ordinarily within the court's sound discretion," *Maloney v. Wake Hosp. Sys.,* 45 N.C. App. 172, 175, 262 S.E.2d 680, 689 (1980) (citing *Edwards v. Hamill,* 266 N.C. 304, 145 S.E.2d 884 (1966)), and will not be disturbed unless the decision is not supported by the evidence, *Zuniga,* 320 N.C. at 252, 357 S.E.2d at 911. In addition, it is not necessary that an expert be a specialist or even licensed in a specific profession to provide expert testimony on the subject at issue. *See Zuniga,* 320 N.C. at 252, 357 S.E.2d at 911; *State v. Evangelista,* 319 N.C. 152, 163-64, 353 S.E.2d 375, 383-84 (1987) (citing *State v. Phifer,* 290 N.C. 203, 225 S.E.2d 786 (1976)); *State v. Bullard,* 312 N.C. 129, 140, 322 S.E.2d 370, 376 (1984).

Here, McLaughlin testified that he had approximately 27 years experience as a physician's assistant and had worked at the hospital emergency room for six years. Previously, he had worked in the emergency room at the University Hospital in Charlotte, where his duties included the diagnosis and treatment of illnesses, injuries and wounds. During the course of his career, he maintained the required annual 100 hours of continuing medical education (most in emergency room treatment), and had treated thousands of patients, including numerous patients with varying degrees of burns.

Significant evidence supports the trial court's decision to qualify McLaughlin as an expert witness. In addition, the record is void of any evidence that defendant requested to *voir dire* the witness; and our Court has been unable to locate any authority mandating *voir dire* particularly absent request by one of the parties. This assignment of error is overruled.

II

[2] Second, defendant argues that the trial court erred in failing to dismiss the charge.

A motion to dismiss is properly denied if "there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense." *State v. Lynch,* 327

N.C. 210, 215, 393 S.E.2d 811, 814 (1990). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Franklin*, 327 N.C. 162, 171, 393 S.E.2d 781, 787 (1990). "When ruling on a motion to dismiss, all of the evidence should be considered in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence." *State v. Davis*, 130 N.C. App. 675, 679, 505 S.E.2d 138, 141 (1998).

N.C. Gen. Stat. § 14-318.4(a3) defines felony child abuse inflicting serious bodily injury as:

A parent or any other person providing care to or supervision of a child less than 16 years of age who intentionally inflicts any serious bodily injury to the child or who intentionally commits an assault upon the child which results in any serious bodily injury to the child, or which results in permanent or protracted loss or impairment of any mental or emotional function of the child, is guilty of a Class C felony. "Serious bodily injury" is defined as bodily injury that creates a substantial risk of death, or that causes serious permanent disfigurement, coma, a permanent or protracted condition that causes extreme pain, or permanent or protracted loss or impairment of the function of any bodily member or organ, or that results in prolonged hospitalization.

In the instant case, the State's evidence tended to show that defendant is the child's father and he was supervising the child on the day the injuries were inflicted. They were home alone. The child was 10 months old at that time. McLaughlin testified that the burns were caused by someone (intentionally) holding a hot object on the child. In addition, the second or third degree burn to the child's hand was severe enough that McLaughlin had to refer the child to a plastic surgeon for treatment.

On 4 December 2001, a skin graft was performed on the child's hand. The child was in the hospital for one week following the skin graft. Thereafter, the child had trouble crawling due to the burns on his hand and knee. Approximately one year later (January 2003), the child remained unable to use the pinky finger on that hand, and had visible scars on his knee.

There is sufficient evidence as to each element of the offense charged and that defendant was the perpetrator of the offense. This assignment of error is overruled.

III

**[3]** Third, defendant argues that the trial court erred in denying his motion to dismiss for lack of a speedy trial in violation of the Sixth Amendment of the United States Constitution and Article I, Section 18 of the North Carolina Constitution.

> In *Barker v. Wingo*, 407 U.S. 514, 530, 33 L. Ed. 2d 101, 117, 92 S. Ct. 2182 (1972), the United States Supreme Court identified four factors "which courts should assess in determining whether a particular defendant has been deprived of his right" to a speedy trial under the federal Constitution. These factors are: (i) the length of delay, (ii) the reason for the delay, (iii) the defendant's assertion of his right to a speedy trial, and (iv) whether the defendant has suffered prejudice as a result of the delay. *See id.*; *see also State v. Flowers*, 347 N.C. 1, 27, 489 S.E.2d 391, 406 (1997), *cert. denied*, 522 U.S. 1135, 140 L. Ed. 2d 150, 118 S. Ct. 1094 (1998). We follow the same analysis when reviewing such claims under Article I, Section 18 of the North Carolina Constitution. *See Flowers*, 347 N.C. at 27, 489 S.E.2d at 406; *State v. Jones*, 310 N.C. 716, 721, 314 S.E.2d 529, 532-33 (1984).

*State v. Grooms*, 353 N.C. 50, 62, 540 S.E.2d 713, 721 (2000). Defendant bears the burden of showing that the delay was caused by the neglect or willfulness of the prosecution. *Id.*; *see also State v. Johnson*, 275 N.C. 264, 273, 167 S.E.2d 274, 280 (1969) ("The proscription is against purposeful or oppressive delays and those which the prosecution could have avoided by reasonable effort.").

There was a total of thirteen months between the time of defendant's arrest and the time of trial. During this time, defendant was arrested in South Carolina in December 2001. He was extradited to North Carolina and placed in custody at Gaston County jail in January 2002, and arraigned in February 2002. His first public defender moved out of state in July 2002, and another public defender was appointed. The second public defender was released due to a conflict of interest, and a third public defender was appointed.

The third public defender filed a bond reduction motion and that matter came for hearing in September 2002. At that hearing, the public defender requested the case be set for trial. The prosecutor assigned to the case had another murder trial set for October 2002 and could not schedule this case until November 2002; however, the

November court session was unavailable as another murder trial was scheduled with a different prosecutor.

Defendant filed his motion to dismiss for lack of a speedy trial in November 2002, and the motion was heard in December 2002. As of the date of hearing on this motion, the case was tentatively scheduled for hearing in January 2003. The case came for hearing in January 2003, as tentatively scheduled.

Defendant has failed to present any evidence that the delay was "purposeful or oppressive" or could have been avoided by reasonable effort by the prosecutor, see *Johnson*, 275 N.C. at 273, 167 S.E.2d at 280, or caused by neglect, *Grooms*, 353 N.C. at 62, 540 S.E.2d at 721. This assignment of error is overruled.

IV

[4] Fourth, defendant argues that the trial court erred in admitting State's exhibit 32 (a baby bottle) over the defendant's objection because the exhibit was not relevant evidence.

Rule 401 defines relevant evidence as such "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (2003). Rule 403 restricts the admission of relevant evidence by stating that "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." N.C.G.S. § 8C-1, Rule 403 (2003).

Here, the defendant alleged that the burns were caused when the child pulled a hot curling iron off of the bathroom counter. The State, however, offered testimony from McLaughlin that the burns were round and not lineal in shape; therefore, the burn marks were inconsistent with the pattern that would be caused by a curling iron. The State introduced a baby bottle as demonstrative evidence of the type of baby bottle found on the stove in the home, and asked McLaughlin whether the burns could have been caused by a baby bottle. McLaughlin replied that the burn pattern was consistent with a round object, which could include a baby bottle. Over defendant's objection, the trial court specifically found this demonstrative evidence was admissible pursuant to Rule 401.

We conclude that State's exhibit 32 was relevant evidence in that testimony was introduced that the burns were round in shape, and

inconsistent with a burn pattern caused by a curling iron. Defendant has not shown that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. This assignment of error is therefore overruled.

## V

[5] Fifth, defendant argues that the trial court erred in its ruling that the DSS file did not contain any exculpatory evidence.

> A defendant who is charged with . . . abuse of a minor has a constitutional right to have the records of the child abuse agency that is charged with investigating cases of suspected child abuse, as they pertain to the prosecuting witness, turned over to the trial court for an in camera review to determine whether the records contain information favorable to the accused and material to guilt or punishment. If the trial court conducts an in camera inspection but denies the defendant's request for the evidence, the evidence should be sealed and "placed in the record for appellate review." On appeal, this Court is required to examine the sealed records to determine if they contain information that is "both favorable to the accused and material to [either his] guilt or punishment." If the sealed records contain evidence which is both "favorable" and "material," defendant is constitutionally entitled to disclosure of this evidence.

*State v. McGill*, 141 N.C. App. 98, 101-02, 539 S.E.2d 351, 355 (2000) (citations omitted). " 'Favorable' evidence includes evidence which tends to exculpate the accused, as well as 'any evidence adversely affecting the credibility of the government's witnesses.' " *Id.* at 102, 539 S.E.2d at 355 (citations omitted). " 'Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.' " *Id.* at 103, 539 S.E.2d at 356 (citations omitted).

We have reviewed the sealed DSS records and found no favorable or material evidence relating to the charges at issue in this case. This assignment of error is overruled.

### Motion for appropriate relief

[6] In defendant's subsequent motion for appropriate relief, defendant argues that the trial court's imposition of a sentence in the aggra-

vated range (the offense was especially heinous, atrocious and cruel) was done in violation of the Sixth Amendment to the U.S. Constitution and *Blakely v. Washington,* —— U.S. ——, 159 L. Ed. 2d 403 (2004).

In *Blakely,* the U.S. Supreme Court held that a trial court alone may not impose a sentence in excess of the "statutory maximum," unless either a jury's verdict finds that additional facts, or aggravating circumstances, warrant an increased sentence, or the defendant has waived his Sixth Amendment right to trial by jury. The *Blakely* Court based its holding on its previous holding in *Apprendi v. New Jersey,* 530 U.S. 466, 490, 147 L. Ed. 2d 435, —— (2000): " 'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be presented to a jury, and proved beyond a reasonable doubt.' " *Blakely,* —— U.S. at ——, 159 L. Ed. 2d at 412. The *Blakely* Court held that the "statutory maximum" for an offense is "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely,* —— U.S. at ——, 159 L. Ed. 2d at 413. The Court further explained that "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Blakely,* —— U.S. at ——, 159 L. Ed. 2d at 413-14.

In the case *sub judice,* the trial court imposed a sentence in the aggravated range pursuant to N.C. Gen. Stat. § 15A-1340.16, which reads in pertinent part:

(a) Generally, Burden of Proof.—The court shall consider evidence of aggravating . . . factors present in the offense that make an aggravated . . . sentence appropriate, but the decision to depart from the presumptive range is in the discretion of the court. The State bears the burden of proving by a preponderance of the evidence that an aggravating factor exists . . . .

(b) When Aggravated . . . Sentence Allowed.—If the court finds that aggravating . . . factors exist, it may depart from the presumptive range of sentences specified in G.S. 15A-1340.17(c)(2). If the court finds that aggravating factors are present and are sufficient to outweigh any mitigating factors that are present, it may impose a sentence that is permitted by the aggravated range described in G.S. 15A-1340.17(c)(4). . . .

(c) Written Findings; When Required.—The court shall make findings of the aggravating . . . factors present in the offense only if, in its discretion, it departs from the presumptive range of sentences specified in G.S. 15A-1340.17(c)(2). Findings shall be in writing. The requirement to make findings in order to depart from the presumptive range applies regardless of whether the sentence of imprisonment is activated or suspended.

N.C.G.S. § 15A-1340.16 (2003).

The *Blakely* Court analyzed the following portions of the 2000 Washington Criminal Code:

A judge may impose a sentence above the standard range if he finds "substantial and compelling reasons justifying an exceptional sentence." § 9.94A.120(2). The Act lists aggravating factors that justify such a departure, which it recites to be illustrative rather than exhaustive. § 9.94A.390. Nevertheless, "[a] reason offered to justify an exceptional sentence can be considered only if it takes into account factors other than those which are used in computing the standard range sentence for the offense." *State v. Gore*, 143 Wn. 2d 288, 315-316, 21 P. 3d 262, 277 (2001). When a judge imposes an exceptional sentence, he must set forth findings of fact and conclusions of law supporting it. § 9.94A.120(3).

*Blakely*, —— U.S. at ——, 159 L. Ed. 2d at 411.

The portion of North Carolina's criminal sentencing statute applicable to the case *sub judice* appears substantially similar to the portion of Washington's criminal sentencing statute analyzed in *Blakely*. We therefore conclude the reasoning of *Blakely* applies to our criminal sentencing statute (N.C. Gen. Stat. § 15A-1340.16) as well.

We note that the State, in its response to defendant's motion for appropriate relief, concedes the trial court's sentencing of defendant in the aggravated range "[u]nder the ruling in *Blakely*, . . . constitutes a violation of defendant's constitutional rights." The State, however, "contends that any violation of defendant's constitutional right in this case was harmless error and therefore defendant is not entitled to have his sentence vacated."

Our Supreme Court has definitively stated that when "the [trial] judge [has] erred in a finding or findings in aggravation and imposed a sentence beyond the presumptive term, the case must be remanded for a new sentencing hearing." *State v. Ahearn*, 307 N.C. 584, 602, 300

S.E.2d 689, 701 (1983). In the case *sub judice*, it is undisputed that the trial judge unilaterally found the existence of an aggravating factor and, thereupon, sentenced defendant in the aggravated range. The State's argument, when viewed in light of the ruling articulated in *Ahearn*, must fail, as this Court should properly remand the case for resentencing. Accordingly, we grant defendant's motion for appropriate relief and remand this case to the trial court for resentencing consistent with the holding in *Blakely*.

No error in trial; remanded for resentencing.

Judges TYSON and STEELMAN concur.